IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


REPUBLIC CAPITAL DEVELOPMENT     §
GROUP, L.L.C.,                   §
                                 §
            Plaintiff,           §
                                 §
v.                               §     CIVIL ACTION NO. H-05-1714
                                 §
A.G. DEVELOPMENT GROUP, INC.     §
and ALLEN GOINS,                 §
                                 §
            Defendants.          §


<u>**MEMORANDUM OPINION AND ORDER**</u>


Plaintiff, Republic Capital Development Group, L.L.C. (Republic), filed this action in Texas state court alleging breach of contract, breach of fiduciary duty, fraud, and conversion against defendants, A.G. Development Group, Inc. (A.G. Group) and Allen Goins, who removed it to this court asserting diversity jurisdiction under 28 U.S.C. § 1332.[1] Pending before the court are Defendants' Motion to Dismiss or Alternatively for Change of Venue (Docket Entry No. 5), Plaintiff's Response (Docket Entry No. 14), Defendants' Motion to Strike the Testimony of Moses D. Altman (Docket Entry No. 17), Defendants' Reply to Plaintiff's Response (Docket Entry No. 18), Plaintiff's Surreply (Docket Entry No. 21), and Defendants' Surreply (Docket Entry No. 22). For the reasons

---

[1]Plaintiff's Original Petition, contained in Defendants' Notice of Removal, Docket Entry No. 1, Exhibit A attached thereto.

explained below, the court will deny in part Defendants' Motion to Strike, deny Defendants' Motion to Dismiss, and grant Defendants' Motion for a Change of Venue under 28 U.S.C. § 1404(a).

## I.  Factual and Procedural Background

In early 1997 Allen Goins, a resident of Florida, traveled to Houston, Texas, and met with representatives of Republic, a Texas limited liability corporation, in Republic's Houston office.[2]  The two parties discussed forming joint ventures to develop real estate in Florida.  Id.  Republic, with Goins' input, drafted two con- tracts that Republic entered into in September of 1997.[3]  One contract was between Republic and Alan Goins as an individual (Goins Joint Venture), and the other contract was between Republic and A.G. Group, a Florida corporation (A.G. Group Joint Venture). The contracts termed each partnership a "Joint Venture" and each contract a "Joint Venture Agreement."[4]  Goins represented both

---

[2]Deposition of Moses D. Altman, 14:15-17:24, contained in Defendants' Reply to Plaintiff's Response, Docket Entry No. 18, Exhibit A attached thereto.

[3]Affidavit of Moses D. Altman, ¶ 1, contained in Plaintiff's Response to Defendants' Motion to Dismiss or, Alternatively, for Change of Venue, Docket Entry No. 14, Exhibit B attached thereto. As discussed below, the court will not strike all of Altman's Affidavit.

[4]Joint Venture Agreements, contained in Plaintiff's Response, Docket Entry No. 14, Exhibit A attached thereto.  When referring generally to both the Goins Joint Venture and the A.G. Group Joint Venture, the court will use the term "Joint Ventures" and when referring jointly to both contracts will use the term "Joint
(continued...)

himself and A.G. Group in communications with Republic.[5]  Goins returned to Houston again in 1998 and discussed potential projects with Moses D. Altman ("Altman"), a representative of Republic.[6]

The sole purpose of the Goins Joint Venture was to "acquire, develop, lease, manage and convey" a single tract of commercial real estate in Florida.[7]  The A.G. Group Joint Venture's stated sole purpose was to "establish a format to acquire, develop, lease, manage and convey" commercial real estate in Florida, potentially encompassing multiple tracts.[8]  The real estate projects envisaged were strip malls anchored by a large grocery store chain.[9]  Both the Goins Joint Venture and the A.G. Group Joint Venture had a term

_____

[4](...continued)
Venture Agreements."

[5]Plaintiff's Response, Docket Entry No. 14, Exhibits D&E.

[6]Altman Deposition, 20:8-21:7.  Goins' Affidavit claims that his second meeting in Texas with representatives of Republic was merely social.  See Affidavit of Allen Goins, contained in Defendants' Motion to Dismiss, Docket Entry No. 5, Exhibit 1 attached thereto.  The court resolves this factual controversy in favor of Republic.  See Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994).

[7]Goins Joint Venture Agreement, ¶ IC, contained in Plaintiff's Response, Docket Entry No. 14, Exhibit A attached thereto.

[8]A.G. Group Joint Venture Agreement, ¶ IC, contained in Plaintiff's Response, Docket Entry No. 14, Exhibit A attached thereto.

[9]Altman Affidavit, ¶ 3.

-3-

of three years, unless terminated or extended by the parties.[10]
Goins agreed to be bound by the A.G. Group Joint Venture for any
project he participated in as an individual.[11]   Republic was the
managing venturer and 75 percent owner of the Joint Ventures.[12]

During the existence of the Joint Ventures, when A.G. Group
located a suitable property in Florida, A.G. Group contacted
Republic by phone to present a project.[13]   Later, during the course
of the existence of the Joint Venture A.G. Group sent proposals in
writing to Republic's Houston office.[14]   A.G. Group presented from
twenty to thirty projects to Republic by telephone or in writing.[15]
If Republic expressed an interest in the project, A.G. Group
developed a proforma for a proposed strip mall project on the
land.[16]   After A.G. Group developed a project proposal, Republic

---

[10]Joint Venture Agreements, ¶ IE.

[11]A.G. Group Joint Venture Agreement, Addendum ¶ 2.

[12]Joint Venture Agreements, ¶¶ 3A & 4A.

[13]Altman Affidavit, ¶ 3.

[14]Id.

[15]Id.

[16]Id.   Altman described proformas in the following manner:
"There is a construction proforma that sets out what it will cost
to develop, if we're talking about a shopping center, the shopping
center that has various components.   There's an income proforma
that will set forth the income and expenses of operating that
property once it's complete."  Altman Deposition, 25:2-25:7.

-4-

would either accept or reject the project.[17]  Acceptance usually took the form of committing funds.[18]

Once a project was accepted Republic secured and provided the financing.[19]  Republic obtained loans in both Florida and Texas to finance the Joint Ventures and provided accounting functions to the Joint Ventures.[20]  To purchase and hold the property in Florida, Republic created a separate corporate entity.[21]  Defendants managed the construction and marketing of the property to tenants.[22]  During their three-year terms, only one project was completed and sold between the two Joint Ventures.[23]  A number of other projects were developed by the A.G. Group Joint Venture over three years.[24]

When the respective terms of the Joint Ventures ended, a number of projects had not been sold or were still being developed.[25]  There is a dispute among the parties whether the Joint

---

[17]Altman Affidavit, ¶ 3.

[18]Id. at ¶ 4.

[19]Id.  See also Defendants' Motion to Dismiss, Docket Entry No. 5, p. 2.

[20]Altman Deposition, 47:7-48:8.

[21]Id. at 52:15-52:22.

[22]Altman Affidavit, ¶ 4.

[23]Altman Affidavit, ¶ 6.  It is unclear from the evidence presented whether the one completed project was the Ocala project of the Goins Joint Venture, or a project developed by the A.G. Group Joint Venture.

[24]Id. at ¶ 5.

[25]Id. at ¶ 6.

Venture Agreements expired by their terms or were extended.[26]   In
any event, defendants moved to withdraw in July of 2001 but neither
defendants nor Republic wound up the Joint Ventures.[27]   Several
projects were sold for a loss after 2001, and defendants managed
the remaining projects.[28]

Republic alleges that the remaining projects pay management
fees and commissions to the defendants, but the defendants have not
accounted for any of the income or expenses to Republic.[29]  Republic
also alleges fraud and breach of fiduciary duty stemming from the
alleged breach of contract and various misrepresentations of
projects to the Joint Ventures.[30]

## II.  **Standard of Review**

The burden rests on the plaintiff to establish that the court
has personal jurisdiction over a nonresident defendant who moves
for dismissal.  <u>Wilson v. Belin</u>, 20 F.3d 644, 648 (5th Cir. 1994).

---

[26]Compare Defendant's Motion to Dismiss, Docket Entry No. 5,
p. 2 ("Defendants chose not to extend the Agreement, and it expired
by its terms in September of 2000.") with Altman Affidavit, ¶ 6
("[T]he parties decided to continue and amend the Joint Venture to
allow for participation by third parties.  On January 31, 2000, the
parties entered into an amendment to the Joint Venture.").

[27]Altman Affidavit, ¶ 7.

[28]<u>Id.</u>  It is unclear whether the Ocala project was still
ongoing because Altman's Affidavit refers jointly to "defendants"
managing the remaining projects.

[29]Plaintiff's Original Petition, ¶¶ 17-21, 29-31.

[30]<u>Id.</u> at ¶¶ 22-28.

-6-

The plaintiff meets this burden by presenting a <u>prima facie</u> case that personal jurisdiction is proper. <u>Jones v. Petty-Ray Geophysical Geosource, Inc.</u>, 954 F.2d 1061, 1067 (5th Cir. 1992). A district court may consider affidavits and other properly obtained evidence when making its determination but must accept the uncontroverted allegations in the complaint as true and resolve all factual conflicts in favor of the plaintiff. <u>Wilson</u>, 20 F.3d at 648.

A federal court sitting in diversity may exercise personal jurisdiction over a defendant to the extent permitted by the forum state's law. Fed. R. Civ. P. 4(e)(1), (h)(1) and (k)(1); <u>see also Central Freight Lines Inc. v. APA Transport Corp.</u>, 322 F.3d 376, 380 (5th Cir. 2003). The Texas long-arm statute allows personal jurisdiction to the full extent allowed by the Due Process Clause of the Fourteenth Amendment. <u>See</u> 2 TEX. CIV. PRAC. & REM. CODE ANN. § 17.042; <u>Schlobohm v. Schapiro</u>, 784 S.W.2d 355, 357 (Tex. 1990). Thus, the typical two-step analysis for personal jurisdiction in diversity cases contracts to a one-step analysis of whether exercising jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. <u>Alpine View Co. Ltd. v. Atlas Copco AB</u>, 205 F.3d 208, 214 (5th Cir. 2000).

The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when

(1) the defendant has had "minimum contacts" with the forum state, and

-7-

        (2)  the exercise of jurisdiction over the defendant
             does not offend "traditional notions of fair play
             and substantial justice."

See International Shoe Co. v. Washington, 66 S.Ct. 154, 158 (1945).

### III.  **Motion to Strike Testimony**

Defendants have moved to strike portions of the affidavit testimony of Altman submitted to the court as an attachment to Plaintiff's Response to Defendants' Motion to Dismiss or Change Venue.[31]  Defendants argue that Altman's testimony is not supported by personal knowledge, and that his testimony regarding the interpretation of the Florida Joint Venture Agreements should be struck as parole evidence.[32]

Defendants move to strike Altman's statement in paragraph one that Goins returned to Houston one time after the parties' first Houston meeting in early 1997 to "finalize the deal."  Defendants argue that this statement contradicts Altman's prior deposition testimony.  The contradiction defendants complain of stems from Altman's statement in his deposition that Goins came to Texas two times.  The first was the initial meeting, and the second was a meeting where the parties discussed the Ocala project and other projects in which Goins wanted Republic's involvement.  Altman also

_____

[31]Affidavit of Moses D. Altman, contained in Plaintiff's Response, Docket Entry No. 14, Exhibit B attached thereto.

[32]Defendants' Objections and Motion to Strike the Testimony of Moses D. Altman, Docket Entry No. 17, pp. 1-3.

                                  -8-

testified that Goins was present at Altman's marriage in March of 1998. (Altman was married several months after the Florida Joint Venture Agreements were finalized.) The court has considered this alleged contradiction and concludes that because the second trip occurred subsequent to the parties' contract, Goins' second trip was not for the purpose of "finaliz[ing] the deal." However, the court concludes that the evidence is still sufficient to establish a second visit by Goins to Texas, during which Goins attended Altman's wedding and discussed possible projects under the Florida Joint Venture Agreements.

Defendants also seek to strike portions of paragraphs three and four, arguing that the objected-to portions of the affidavit interpret the Joint Ventures. The language defendants object to in paragraph three begins with the sentence "[u]nder the JV Agreement."[33] Paragraph four begins with the phrase "[p]er the terms of the JV Agreement."[34] This quoted language, challenged by defendants, is not relevant to the court's consideration of Defendants' Motion to Dismiss or Alternatively to Transfer Venue, and therefore the court will not address it. The remainder of the objected-to portions of paragraphs three and four are relevant. Republic argues that the remainder of paragraphs three and four are statements of fact and not interpretations of the Joint Venture

---

[33]Altman Affidavit, ¶ 3.

[34]Id. at ¶ 4.

Agreements.   The court agrees and will deny defendants' motion to strike the remainder of paragraphs three and four.

Because the remaining parts of Altman's affidavit that are challenged by defendants are also not relevant to the court's consideration of Defendants' Motion to Dismiss or Alternatively Transfer Venue, the court will not address them.

## IV.  In Personam Jurisdiction

**A.  Minimum Contacts**

Minimum contacts exist when the defendants' conduct with the forum state is such that "he should reasonably anticipate being haled into court there."  Burger King Corp. v. Rudzewicz, 105 S.Ct. 2174, 2183 (1985) (quoting World-Wide Volkswagen Corp. v. Woodson, 100 S.Ct. 559, 567 (1980)).  The minimum contact requirement can be divided into contacts that give rise to either specific or general jurisdiction.   Gundle Lining Construction Corp. v. Adams County Asphalt, 85 F.3d 201, 205 (5th Cir. 1996).   Republic expressly denies relying on general jurisdiction.[35]  Instead, Republic argues that defendants' contacts in Texas are sufficient to give the court specific jurisdiction over defendants.   Id.

Specific jurisdiction derives from "the relationship among the defendant, the forum, and the litigation."  Shaffer v. Heitner, 97 S.Ct. 2569, 2580 (1977).  The requirement of minimum contacts for specific jurisdiction is satisfied when a defendant has purpose-

---

[35]Plaintiff's Response, Docket Entry No. 14, p. 7.

fully directed its activities at the forum state, and the litigation results from alleged injuries that arise out of or relate to those activities. Burger King Corp. v. Rudzewicz, 105 S.Ct. 2174, 2183 (1985). For specific jurisdiction to exist, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting business within the forum State, thus invoking the benefits and protections of its laws." Id. (quoting Hanson v. Denckla, 78 S.Ct. 1228, 1239-40 (1958)). Contract-based cases require more than mere contracting with a resident of the forum state to establish specific jurisdiction over a non-resident defendant. Burger King, 105 S.Ct. at 2185. See also Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 337 (5th Cir. 1999).[36]

Defendants argue that they did not have minimum contacts with Texas.[37] They first argue that Goins' two visits to Texas are

---

[36]When the actual content of communications directed toward a forum gives rise to intentional tort causes of action, it is sufficient, standing alone, to constitute purposeful availment. Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 213 (5th Cir. 1999). Because the court concludes that the minimum contacts requirement has been met by virtue of defendants' actions directed toward Texas without resorting to the allegedly tortious nature of those actions, it need not address this issue.

[37]Defendants repeatedly cite Televentures, Inc. v. International Game Technology, 12 S.W.3d 900 (Tex. App. -- Austin 2000, pet. denied), in support of their argument against specific jurisdiction. In Televentures the court found that Texas did not have minimum contacts, and therefore lacked personal jurisdiction over a non-resident defendant. Id. at 912. The case involved a nonresident who signed two letters of intent with a Texas resident to develop an in-room gaming system for hotel guests. Id. at 904. The first letter of intent committed the two entities to working
(continued...)

insufficient to establish minimum contacts, and then argue that defendants' communication with Republic in Texas standing alone is insufficient to support specific jurisdiction.  Defendants argue that the combination of entering into a contract with a Texas resident, engaging in business communications, and accepting financing or payments, is insufficient to establish the requisite minimum contacts necessary to exercise specific personal jurisdiction over a nonresident defendant.

Defendants also argue that the place of performance of the Joint Venture Agreements was Florida, where the real estate was purchased and developed.  The place of performance, however, is not

_____

[37](...continued)
together to develop the in-room gaming system, and the second contemplated developing a mutually beneficial business relationship between another business and a newly formed partnership of plaintiff and defendant.  Id. at 904-05.  Neither letter disclosed the state in which the new partnership would be formed or domiciled.  Id. at 909.  The letters were prepared by plaintiff in Austin and mailed to defendant in another state.  Id. at 905.  During their business relationship, the two entities communicated via personal visits, facsimiles, letters, and telephone calls, but none of defendant's employees traveled to Texas.  Id.  All of plaintiff's activities were performed in Texas.  Id. at 909.

The Televentures court held that minimum contacts were not established.  Id. at 910.  This case, however, is distinguishable from Televentures.  There are several factors present here that were not present in Televentures.  Defendants' actions in this case directed toward Texas consisted of more than simply engaging in communications during performance of a contract.  First, Goins, for himself and on behalf of A.G. Group, traveled to Texas twice, the first time to discuss forming the partnership and the second to discuss proposed partnership real estate projects.  Both Joint Venture Agreements named Houston, Texas, as the place of business for the partnership.  Finally, the contract itself chooses Texas law for its construction.

determinative of the minimum contacts inquiry. "[T]he proposition that the place of performance of a contract is automatically determinative of whether or not a forum has jurisdiction over a non-resident defendant" is "misguided." Electrosource, Inc. v. Horizon Battery Technologies Ltd., 176 F.3d 867, 874 (5th Cir. 1999). The Supreme Court has explicitly rejected reliance on "mechanical" tests or "conceptualistic . . . theories of the place of contracting or of performance" for determining the existence of personal jurisdiction. Id. (quoting Burger King, 105 S.Ct. at 2185).

Instead, in examining defendants' contacts with Texas this court takes a realistic approach, looking at "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine if defendants purposefully established minimum contacts with the forum. Burger King, 105 S.Ct. at 2185; see also Stuart v. Spademan, 772 F.2d 1185, 1193-94 (5th Cir. 1985).

The facts of this case have many similarities to Central Freight Lines Inc. v. APA Transport Corp., 322 F.3d 376 (5th Cir. 2003). In Central Freight Lines the Fifth Circuit held that a non-resident's initiation of negotiation for a long-term contractual relationship with a Texas company in Texas was sufficient to create personal jurisdiction over the nonresident defendant in Texas. Central Freight Lines, 322 F.3d at 385. The defendant in Central

-13-

<u>Freight Lines</u> was APA Transport Company ("APA"), a New Jersey Freight delivery company that sent representatives to meet with plaintiff Central Freight Lines ("CFL") at its headquarters in Waco, Texas. <u>Id.</u> at 382. The meeting led the parties to negotiate a contract by means of written correspondence and telephone calls. <u>Id.</u> The contract was a standing agreement reflecting the terms and conditions under which each carrier could use the services of the other in the other's main region of operation. <u>Id.</u> at 379.

In holding that the facts of the case were sufficient to establish minimum contacts with Texas, the court stated that "APA specifically and deliberately 'reached out' to a Texas corporation by telephone and mail with the deliberate aim of entering into a long-standing contractual relationship with a Texas Corporation." <u>Id.</u> at 382. The court also found it relevant that by entering into the contract, APA knew it was affiliating itself with an enterprise based primarily in Texas. <u>Id.</u> During the course of the contract negotiations, APA provided CFL with pricing and shipping information. <u>Id.</u> Although there was no forum selection or choice of law clause that could have put APA on specific notice that it might be amenable to suit in Texas, the court nevertheless found that APA "purposefully directed" its activities to the Texas Forum and should have reasonably anticipated being haled into court in Texas. <u>Id.</u> at 383.

-14-

In this case the court agrees that neither Goins' visits to
Texas nor defendants' communications directed at Texas, standing
alone, are sufficient to establish minimum contacts.  But as in
Central Freight, defendants should have anticipated being haled
into Texas court notwithstanding their "relatively brief *physical*
presence in the state."  Id. (emphasis in original).  Defendants,
like the defendants in Central Freight, reached out to Texas by
traveling to the state and beginning contract negotiations with
Republic, a Texas company.  The record shows that the initial
meeting between Goins and Republic took place in Texas in 1997.
Goins, representing himself and A.G. Group, met with Republic and
discussed forming a joint venture to develop real estate in
Florida.[38]  This meeting led to the formation of two joint ventures,
one between Goins and Republic and one between A.G. Group and
Republic.

Both Goins and A.G. Group entered into Joint Venture
Agreements and commenced a multi-year business relationship with
Republic.  By entering into the Joint Ventures with Republic,
defendants knew that they were affiliating themselves with a Texas-

---

[38]See Burger King, 105 S.Ct. at 2184 (noting that physical
presence does enhance a defendant's affiliation with a state).
Defendants argue that Goins' initial visit to Texas in 1997 was not
on behalf of A.G. Group.  Republic responds that in answering an
interrogatory requesting identification of each time it or any
person on its behalf visited Texas, A.G. Group cited Goins' 1997
visit.  Plaintiff's Surreply, p. 3.  The court will consider Goins'
1997 visit in its personal jurisdiction analysis as occurring on
behalf of both Goins and A.G. Group.

based limited liability company.[39]   The Joint Venture Agreements required that Republic supply the financing and provide accounting functions for the Joint Venture.

In 1998, during the course of their more than three-year relationship, Goins traveled to Texas a second time on what he characterizes as a social visit.  According to Altman, however, the social visit included discussions of potential real estate projects with Republic.   Although Republic's representatives traveled to Florida many times, the record also reflects that much of the business between Republic and defendants Goins and A.G. Group took place via mail and telephone calls.   Defendants sent numerous business communications to Republic in Texas during the course of the business relationship.

As courts have repeatedly noted, it is an inescapable fact in the modern world that much business is transacted by mail and electronic wire communications.   Burger King, 105 S.Ct. at 2184; Central Freight, 322 F.3d at 385.   "So long as a commercial actor's efforts are 'purposefully directed' toward a resident of another State, the mere absence of physical contacts within the forum State cannot defeat personal jurisdiction there."   Central Freight, 322 F.3d at 385.  Goins directed communications to Republic in Texas to obtain financing and development costs from Republic for the Ocala

_____

[39]Republic has only one office, which is located in Houston, Texas.  Plaintiff's Response, Docket Entry No. 14, p. 18.

-16-

project.    A.G.  Group  made  telephone  calls,  mailed  letters,  and
mailed proformas describing the real estate projects in Florida so
that  Republic  could  elect  to  participate  or  opt  out  of  the
projects.   Both  defendants  mailed  to  Republic  in  Texas  multiple
requests for payments of invoices.[40]  These business communications
were purposefully directed toward Republic in Texas for the purpose
of securing funds for the development of the Florida real estate
projects.

     The facts of this case are in one respect even stronger than
those in Central Freight because the language of the Joint Venture
Agreements put the defendants on notice that they might be haled
into  court  in  Texas.    The  actual  language  of  the  contract  is
relevant to the minimum contacts analysis, and the contract clearly
contemplates Republic performing some of its obligations in Texas.
See Burger King, 105 S.Ct. at 2186-87; Gundle Lining, 85 F.3d at
205 ("[O]ne factor that might affect the minimum contacts analysis
is the actual language present in the contract itself").

     The  two  Joint  Venture  Agreements  that  formed  their
partnerships explicitly provided that the partnerships were based
in Houston, Texas, and contained a Texas choice of law provision.

---

[40]The  record  shows  that  both  defendants  Goins  and  A.G.  Group
sent  requests  for  payment  to  Republic  in  Texas.    Although  the
letters  requesting  payment  of  invoices  are  on  A.G.  Group
letterhead,  at  least  three  of  the  letters  relate  to  the  Ocala
Project.   Goins, not A.G. Group, was a party to the Ocala Project
pursuant  to  the  Goins  Joint  Venture  Agreement.    See  Plaintiff's
Response, Docket Entry No. 14, Exhibits D&E attached thereto.

Both Joint Venture Agreements state that "[t]he Joint Venture will conduct its business at . . . Houston, Texas 77027, or at such other place as may be designated by the Managing Venturer or the Company."[41]   The Joint Venture Agreements stated that the books of both partnerships were to be kept at Republic's principal place of business, located in Houston, Texas.[42]   Both Joint Venture Agreements required A.G. Group and Goins to offer Republic, in Texas, the opportunity to participate in all retail developments in which either was involved during the term of the Joint Ventures.[43] Republic could either accept or reject the development opportunity, but once accepted had to provide financing and accounting functions to defendants.[44]

Furthermore, although the Joint Venture Agreements do not contain a choice of forum provision, they do contain a limited choice-of-law provision.  The choice-of-law provision provides that "[a]ny matter which may arise hereunder which is not herein specifically provided for shall be determined in accordance with and governed by the Texas Uniform Partnership Act, Article 6132b, Texas Revised Civil Statutes."[45]   Although limited in scope, this choice of law provision, coupled with both contracts designating

---

[41]Joint Venture Agreements, ¶ 1D.

[42]Id. at ¶ IIID2.

[43]Id. at ¶ IF.

[44]Id.

[45]Id. at ¶ IX.

Houston, Texas, as the place where the Joint Ventures conducted business, put defendants on notice that they might be haled into court in Texas.

Defendants' contacts with Texas were not "random," "fortuitous," or "attenuated." See Burger King, 105 S.Ct. at 2183. Taking into account defendant's physical presence in Texas to negotiate the Joint Venture Agreements, the course of dealing between the two parties including a multitude of business communications defendants directed at Republic in Texas, and the language of the Joint Venture Agreements, the court finds that Republic has established a prima facie case of minimum contacts over both Goins and A.G. Group.

**B.   Traditional Notions of Fair Play and Substantial Justice**

Once a plaintiff has established minimum contacts, the burden then shifts to the defendant to show that the assertion of jurisdiction would offend notions of fair play and substantial justice. Burger King, 105 S.Ct. at 2184; Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 215 (5th Cir. 1999). When determining whether the exercise of personal jurisdiction would offend notions of fair play and substantial justice the court examines (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the shared interest of the several states

-19-

in furthering fundamental substantive social policies.  <u>Gundle</u>
<u>Lining</u>, 85 F.3d at 207 (citing <u>Asahi Industries Co. v. Superior</u>
<u>Court</u>, 107 S.Ct. 1026, 1033 (1987)).  "[I]t is incumbent on the
defendant to present a compelling case that the presence of some
consideration would render jurisdiction unreasonable." <u>Jones v.</u>
<u>Petty-Ray Geophysical Geosource, Inc.</u>, 954 F.2d 1061, 1068 (5th
Cir. 1992) (citing <u>Burger King Corp.</u>, 105 S.Ct. at 2184-85).

Defendants have not met the burden.  In arguing that fair play
and substantial justice require that this action be dismissed
defendants repeat their arguments against minimum contacts.  They
argue that fair play and substantial justice do not support
personal jurisdiction because the Joint Venture Agreements were
performed almost exclusively in Florida; Republic's responsi-
bilities under the Joint Venture Agreements were limited to
deciding whether to participate in a project and, if so, to provide
financing or development costs; most of Republic's performance took
place in Florida; and absent the Joint Venture Agreements,
plaintiff has no relationship with either defendant.

The court, having examined the pleadings and the record, has
determined that the relevant factors balance in favor of exercising
personal jurisdiction.  While defendants would undoubtedly bear a
burden trying a case in this forum, the plaintiff has an interest
in securing relief here, and the state of Texas has an interest in
adjudicating its domiciliary's alleged breach of contract and tort

claims.  See Central Freight Lines, 322 F.3d at 384-85.  The court concludes that exercising jurisdiction over defendants would not offend traditional notions of fair play and substantial justice.

## V.  Venue

### A.  Venue is Proper in this District.

Defendants argue that this action should be dismissed because venue is not proper in this district under 28 U.S.C. § 1391.[46] Venue in removed cases is governed solely by the removal statute, 28 U.S.C. § 1441(a), not § 1391, the general venue statute. Polizzi v. Cowles Magazines, Inc., 73 S.Ct. 900, 902-03 (1953). See also Willowbrook Foundation, Inc. v. Visiting Nurse Association, Inc., 87 F.Supp.2d 629, 635 (N.D. Miss. 2000).  The removal statute states that a civil action may be removed to the district court "embracing the place where such action is pending." 28 U.S.C. § 1441(a).  The Supreme Court made clear in Polizzi that

---

[46]Defendants argue that venue is improper under 28 U.S.C. § 1391(b).  Republic states in a footnote that defendants have incorrectly cited to § 1391(b), which governs subject matter jurisdiction, instead of § 1391(a), which governs diversity jurisdiction.  Both parties base much of their venue arguments on whether a "substantial part of the events or omissions giving rise to the claim occurred" in this district, a basis for venue under § 1391(a) and (b).  Both parties misapply § 1391 because, as the court explains, § 1441(a) is the proper venue statute applicable to removal cases.  Polizzi v. Cowles Magazines, Inc., 73 S.Ct. 900, 902-03 (1953).  This error is apparently not unique to the parties before this court.  See Lundahl v. Public Storage Management, Inc., 62 Fed. Appx. 217, 218-19 (10th Cir. 2003) (reversing district court's dismissal in removal case based on improper venue under 28 U.S.C. § 1391 when party had argued based on § 1391, not § 1441(a)).

-21-

the geographical component of § 1441(a) is a venue provision.
Polizzi, 73 S.Ct. at 902.  Defendants can thus challenge removal
itself as improper (or having been made to the wrong district
court) but may not challenge venue in the district court according
to that court's venue rules as if it had first been brought there.
Id. at 902-03.  Defendants' voluntary application for removal
confers venue over them in this court.  Id. at 902.  Despite the
propriety of venue in this court, defendants can argue that the
case should be transferred to Florida pursuant to 28 U.S.C. §
1404(a).

## B.    Transfer Under 1404(a)

Section 1404(a) provides that:

> For the convenience of parties and witnesses, in the
> interest of justice, a district court may transfer any
> civil action to any other district or division where it
> might have been brought.

28 U.S.C. § 1404(a).  The purpose of the statute is to avoid wasted
time, energy, and money while at the same time protecting
litigants, witnesses, and the public against unnecessary
inconvenience and expense.  See Van Dusen v. Barrack, 84 S.Ct. 805,
809 (1964).  The decision to transfer a pending case under
§ 1404(a) is committed to the sound discretion of the district
court.  Jarvis Christian College v. Exxon Corp., 845 F.2d 523, 528
(5th Cir. 1988).  The plaintiff's choice of forum is entitled to
some deference.  See In re Horseshoe Entertainment, 337 F.3d 429,

434 (5th Cir. 2003); <u>Peteet v. Dow Chemical Co.</u>, 868 F.2d 1428, 1436 (5th Cir. 1989); <u>Continental Airlines, Inc. v. American Airlines, Inc.</u>, 805 F.Supp. 1392, 1395-96 (S.D. Tex. 1992) (collecting cases).  The plaintiff's choice of forum at the very least puts the burden on defendants to demonstrate why the forum should be changed.  <u>Peteet</u>, 868 F.2d at 1436.

The court must first determine whether the judicial district to which transfer is sought is a district in which the claim could have been filed.  <u>In re Volkswagen AG</u>, 371 F.3d 201, 203 (5th Cir. 2004).  That is not difficult here, as Republic concedes that "[a]dmittedly, it is easier to establish venue and jurisdiction in Florida."[47]  Republic could have filed this action in the Middle District of Florida because both Goins and A.G. Group are residents of Tampa, Florida, and jurisdiction would have been supportable based on diversity of citizenship.[48]

After establishing that the case could have originally been brought in the Middle District of Florida, the court must consider several factors, both private and public, none of which are given dispositive weight.  <u>Volkswagen AG</u>, 371 F.3d at 203.  The private concerns the court must consider include the relative ease of access to sources of proof; the availability of compulsory process for the attendance of unwilling witnesses; the cost of obtaining the attendance of willing witnesses; and all of the practical

---

[47]Plaintiff's Response, Docket Entry No. 14, p. 20.

[48]Plaintiff's Original Petition, ¶¶ 4-5.

problems that make trial of a case easy, expeditious, and inexpensive. Action Industries, Inc. v. United States Fidelity and Guarantee Co., 358 F.3d 337, 340 n.8 (5th Cir. 2004). The public concerns include: the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the familiarity of the forum with the law that will govern the case; and the avoidance of unnecessary problems of conflict of laws with the application of foreign laws. Id.

Defendants argue that the Middle District of Florida is a more convenient forum because the operative facts of the matter occurred in Florida, and the key witnesses and documents are located in Florida. The genesis of the lawsuit is Republic's contention that defendants did not account to the Joint Ventures for the expenses and income generated by the real estate projects in Florida.[49] Although Republic states that it has a significant number of files at its offices in Houston, where the Joint Ventures' books of account are located, Republic is alleging that defendants did not provide them with the proper accounts. The accounting information therefore would be located in Florida where defendants reside. Because there has been no evidence that the documents "are so voluminous that their transport is a major undertaking," the court does not give undue weight to this factor. Gardipee v. Petroleum Helicopters, 49 F.Supp.2d 925, 931 (E.D. Tex. 1999). However, the

[49]Plaintiff's Original Petition, ¶ 14.

court does consider in its calculus that much of the documentary proof on this matter, including the sales records and leases, is located in Florida.

Republic argues that transfer of this case would merely shift the burden from defendants to plaintiff. This argument is not persuasive. Besides its accountants, Republic identifies only its key employees, members, and managers as potential witnesses. Defendants identify several more non-party witnesses whose attendance it would not be able to compel at trial. These witnesses include contractors, regulatory officials, attorneys, accountants, engineers, and architects, all of whom are located in Florida.[50] This makes inherent sense, as the real estate was located in Florida, developed in Florida, and leased to tenants in Florida. Furthermore, most other parties involved in the purchase and development of the real estate were also in Florida. The non-party witnesses residing in Florida are beyond the power of this court to compel their testimony.[51] Defendants note that many of these witnesses also have documents that are pertinent to this case

---

[50]Republic points out that several of the witnesses defendants list as necessary for their defense are actually required only for a counterclaim that has yet to be filed. Plaintiff's Surreply, p. 8. Despite this defendants have listed many more witnesses that they require to defend against Republic's allegations. Defendants' Reply, Docket Entry No. 18, Exhibit B attached thereto (Affidavit of Allen Goins). The witness list includes an outline of the testimony that the witnesses will offer.

[51]See FED. R. CIV. P. 45(c)(3).

that would have to be transported to Texas if the case were tried here.

In addition, it is relevant that Republic no longer operates as a functioning venture, and exists only to pursue this litigation.[52] It operates with three shareholders: Neil Lande, Abe Charski, and Moses Altman.[53] The only non-party witnesses Republic cites are its accountants, former and present.[54] Given these facts, it is difficult to lend much weight to Republic's contention that if the case were litigated in Florida, it would have to close its doors for the duration of the trial.

Moreover, transfer would not impose a significant delay on disposition of the case. Although this case has been pending before this court for six months, the litigants have up to this point been arguing over jurisdiction and venue. The case has not developed the type of voluminous record that would require a large initial time investment for a transferee court, potentially delaying the case. In addition, the  pace of resolving disputes filed in the Middle District of Florida does not differ significantly from that of the Southern District of Texas.[55]

---

[52]Altman Deposition, 57:8-57:16.

[53]Id. at 57:18-57:19.

[54]Altman Affidavit, ¶ 8.

[55]The Middle District of Florida averages 8.7 months from filing to conclusion of a case, while the Southern District of Texas averages 6.8 months.  Plaintiff's Response, p. 19 (citing statistics located at http://www.uscourts.gov/cgi-bin/cmsd2004.pl).

There is no issue of having localized controversies decided at home in this case because this is not a localized controversy.  The case arose from a dispute about the accounting for profits and losses for real estate projects in Florida, not Texas.  The real estate is in Florida, the professionals who helped construct and develop the malls are in Florida, and most of the evidence is located in Florida.  Although the case will involve Texas law in construing the Joint Venture Agreements, Republic also asserts claims under breach of fiduciary duty, fraud, and conversion, which arise out of tort, not contract.  Republic does not argue that Texas law would be applied to all of its claims.  Texas's choice of law rules, which this court applies, provide that in the absence of a contractual choice of law provision "the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue."  <u>Duncan v. Cessna Aircraft</u>, 665 S.W.2d 414, 421 (Tex. 1984).  In this case that might well be Florida law.

Although Republic will undoubtedly be more inconvenienced by having to pursue its lawsuit in a Texas forum, defendants have met their burden by establishing that the relevant factors weigh heavily in favor of transferring this case to Florida.  The court will therefore transfer this case to the Middle District of Florida.

## VI.  <u>Conclusions and Order</u>

-27-

For the reasons explained above, the court concludes that it has personal jurisdiction over defendants Goins and A.G. Group and that venue is proper here.  However, the court will transfer venue to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a).

Defendants' Motion to Strike the Testimony of Moses D. Altman (Docket Entry No. 17) is **DENIED IN PART**, Defendants' Motion for Dismissal (Docket Entry No. 5) is **DENIED**, but the Alternative Motion to Transfer Venue (Docket Entry No. 5) is **GRANTED**.  This action is **TRANSFERRED** to the United States District Court for the Middle District of Florida.

**SIGNED** at Houston, Texas, on this 19th day of December, 2005.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-28-